UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 7 |
| Stephen Joseph Mueller, and<br>Shae Victoria Mueller,<br>       Debtors. | Case No. 10-23917-svk |

| | |
|---|---|
| Building Trades United Pension Trust Fund, et al.,<br>       Plaintiffs,<br>v.<br>Stephen Joseph Mueller, and<br>Shae Victoria Mueller,<br>       Defendants. | Adv. Case No. 10-2351 |

## MEMORANDUM DECISION DENYING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Court held a hearing April 28, 2011 to consider a Motion for Summary Judgment filed by Building Trades United Pension Trust Fund and other ERISA-based welfare and pension plans (the "Plaintiffs"). After considering the exhibits, briefs, and arguments of counsel, the Court denied the Plaintiffs' Motion. This Memorandum Decision details the Court's reasoning.

### STATEMENT OF FACTS

Plaintiffs assert in the Complaint that Stephen Mueller (the "Debtor"), as owner of M&M Mechanical, committed theft by contractor when he failed to pay the Plaintiffs from three M&M construction projects. Wis. Stat. § 779.02(5). The projects include: the Pabst Brewery project ("Brewery"); the Orthopedic Associates project ("Orthopedic Associates"); and the Pick & Save Good Hope project ("Good Hope"). In each project, M&M was a signatory to a collective bargaining agreement requiring M&M to make fringe benefit contributions to the Plaintiffs. The

Plaintiffs allege that because M&M failed to make those contributions, the Debtor committed defalcation while acting as a fiduciary, rendering his debt to the Plaintiffs nondischargeable. 11 U.S.C § 523(a)(4). The Debtor denies that he committed defalcation; rather the failure to pay the Plaintiffs was the inadvertent result of problems arising in each of the projects that ultimately led the Debtor to wind up his business operations in November 2009, deplete his personal funds, and file for Chapter 7 bankruptcy. (Debtor's Brief in Opposition to Plaintiffs' Motion for Summary Judgment 3.)

## ANALYSIS

### A. Summary Judgment Methodology

Under Federal Rule of Civil Procedure 56(c), made applicable by Bankruptcy Rule 7056, the court may grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is to be denied only if there is a genuine issue of material fact. *Anderson v. Liberty Lobby*. Inc., 477 U.S. 242, 248 (1986). A material fact is one related to a disputed matter that might affect the outcome of the action. *Id*. When deciding whether there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party, and all reasonable inferences are drawn in favor of that party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003); *see also Schuster v. Lucent Techs*., *Inc.,* 327 F.3d 569 (7th Cir. 2003). The movant bears the burden to establish that summary judgment is proper. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 159 (1970); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Spring v. Sheboygan Area School Dist*., 865

F.2d 883, 886 (7th Cir. 1989); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. Nondischargeability under § 523(a)(4)

Bankruptcy Code § 523(a)(4) carves out an exception to discharge for debts created by the debtor's fraud or defalcation in a fiduciary capacity.[1] To prevail, the creditor must prove that: (1) a trust existed, (2) the debtor was a fiduciary of the trust, and (3) the debtor committed fraud or defalcation while carrying out the fiduciary responsibilities associated with the trust. In this case, Wisconsin's theft by contractor statute provides the requisite trust, as it states that "all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund . . . to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements." Wis. Stat. § 779.02(5). Moreover, the Debtor as principal of M&M is a fiduciary of the trust. Wis. Stat. § 779.02(5). *See Capen Wholesale, Inc. v. Probst,* 180 Wis.2d 354, 360-61, 509 N.W.2d 120, 123 (Wis. App. 1993). The remaining issue is whether the Debtor committed a defalcation by failing to pay the Plaintiffs.

There is a wide variance among courts as to the degree of fault necessary to constitute defalcation. Susan V. Kelley, GINSBERG & MARTIN ON BANKRUPTCY, § 11.06[G][2][b] (5th ed. Supp. 2010) ("Many [courts] hold that negligence or ignorance will suffice, without proof of

---

[1] Courts narrowly construe dischargeability exceptions in favor of the debtor. *See In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003); *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992). A plaintiff must prove all elements of the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991).

3

intentional wrongdoing."). A minority of courts, including the Fourth, Eighth, and Ninth Circuits apply a strict interpretation of defalcation that includes even an innocent mistake. *See In re Uwimana*, 274 F.3d 806, 811 (4th Cir. 2001) ("[N]egligence or even an innocent mistake which results in misappropriation or failure to account is sufficient."); *In re Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001) ("Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations."); *In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997) ("Defalcation includes the innocent default of a fiduciary who fails to account fully for money received."); *In re Hatcher,* 435 B.R. 615, 619 (Bankr. D. Neb. 2010) ("a bankruptcy court can find a 'defalcation' under 11 U.S.C. § 523(a)(4) without evidence of bad faith, intentional fraud, or other intentional wrongdoing."). But a majority of courts have adopted a higher threshold for defalcation. For example, the Second Circuit, which previously applied a strict interpretation of defalcation, has since joined with courts requiring evidence of wrongful conduct to find the debtor has committed defalcation. *Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2d Cir. 2007), *cert. denied*, 129 S.Ct. 895 (2009). In *Hyman*, the Second Circuit explained, "defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness—a showing akin to the showing required for scienter in the securities law context." *Id.* at 68. The court noted that the penalty of nondischargeability is so harsh that it should be limited to fiduciaries who consciously disregard their duties; and not applied to fiduciaries who fail to account for funds or property "only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable." *Id.* at 68-69. Likewise, the Seventh Circuit has recognized that defalcation requires more than mere negligence. *Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) ("mere negligent breach of a fiduciary duty is *not* a 'defalcation'") (emphasis supplied). Although proof of something more than mere negligence is

4

required to find defalcation in the Seventh Circuit, the line between mere negligence and conscious disregard of duty is somewhat nebulous.  In *In re Rieck*, Judge Utschig attempted to define the contours of the *Meyer* standard by explaining: "Innocent or unintentional defalcations may be discharged, and nondischargeability is premised upon a showing of something more than negligence, which need not rise to the level of fraud but still must be akin to a reckless, willful, or knowing breach of fiduciary responsibility." 439 B.R. 698, 702 (Bankr. W.D. Wis. 2010).  *See also Dealer Servs. Corp. v. Erb (In re Erb)*, 2011 Bankr. LEXIS 1382, *11 (Bankr. W.D. Wis. Apr. 8, 2011) (Bankr. W.D. Wis. Apr. 8, 2011) (stating that a fiduciary "must intentionally breach his duties").  *Rieck* emphasizes that, while contractors are charged with knowledge of the state's construction trust fund requirements, knowledge alone does not make a contractor sufficiently culpable for every failure to pay to rise to the level of defalcation:  "[T]here needs to be proof that the debtor was more than negligent in the handling of trust funds."  439 B.R. at 703 (citing *Ganther Constr., Inc. v. Ward (In re Ward)*, 417 B.R. 582, 592 (Bankr. E.D. Wis. 2009); *Chase Lumber & Fuel Co. v. Koch (In re Koch),* 197 B.R. 654, 658 (Bankr. W.D. Wis. 1996)).

For example, defalcation was shown by evidence that debtors used false accounting methods to systematically loot their daughter's trust account for their own use.  *In re Bingaman*, 397 B.R. 444 (Bankr. C.D. Ill. 2008).  In *Bingaman*, instead of using a trust account for the comfort, support, and education of their daughter, the debtors (who were fiduciaries of the trust) used the account as their personal piggy bank—paying for their vehicles, cable television, and cell phones.  *Id.*  The court held that the debtors were culpable for defalcation because the improper withdrawals and false accounting demonstrated a willful breach of their fiduciary duty. In contrast, where the debtor's breach is due to poor judgment, rather than self-interest, courts have not found proof of defalcation.  *In re Hunt*, 439 B.R. 690 (Bankr. N.D. Ind. 2010).  In *Hunt*,

5

the debtor who was the fiduciary of a trust invested $150,000 of trust property in fraudulent Internet scams that he believed were legitimate. He hoped the investments would pay off in a considerable return for the trust; those hopes proved unfounded when the $150,000 of trust property was stolen by the scams' perpetrators. Although the debtor's decision to invest in the scams was "gullible and even quintessentially stupid," the court noted his intent was to benefit the trust rather than himself. *Id.* at 693. Accordingly, the court held that the debtor was not culpable for defalcation under § 523(a)(4) because his actions, while "undoubtedly negligent," were not willful, knowing, or reckless. *Id.*

In light of the case law in the Seventh Circuit, a creditor seeking to succeed on a claim of defalcation under § 523(a)(4) must establish something more than mere negligence: the creditor must set forth facts establishing a willful, knowing, or reckless breach of duty. Knowledge of the theft by contractor law on its own does not constitute proof of defalcation. The court should consider whether other factors exist, such as whether the debtor acted in his own self-interest or merely showed what in hindsight amounted to poor judgment.

### C. The Plaintiffs did not prove that the Debtor's conduct constituted a defalcation.

The parties agreed that there are genuine issues of material fact preventing summary judgment as to the Brewery project. After considering the Affidavits, deposition testimony and exhibits, the Court concluded that a genuine issue of material fact was present with respect to the other projects involved in this case.

1. Orthopedic Associates

The Plaintiffs seek to recover $1,856.36 in unpaid fringe benefits from the Orthopedic Associates project. The Debtor concedes that he was paid in full on the project and believed the Plaintiffs were paid by a cashier's check in the amount of $4,872.54 dated September 24, 2009.

6

(Mueller Deposition 101-02, Ex. 7; Affidavit of Yingtao Ho, Ex. 3.)  However, not until February or March 2011 did the Debtor learn the $4,872.54 check had been earmarked for another project.  (Mueller Affidavit 3.)  Therefore, the Debtor asserts that he made a mistake of fact which was merely negligent, but not reckless, knowing, or willful.

The Plaintiffs contend that in response to a discovery request, the Debtor admitted that the check for $4,872.54 was for June 2009 fund contributions only, and not work on the Orthopedic Associates project that took place in September 2009.  They also point to the Debtor's deposition that the Debtor generally paid bills 60 to 90 days after receiving payment on a project, and conclude that it is implausible that the $4,872.54 check dated two months earlier could have been meant to cover the Orthopedics Associates fringe benefits.  (Mueller Dep. 53-54, 99.)  However, in that same deposition, the Debtor repeatedly testified that he was not operating under normal conditions, and that he believed the $4,872.54 check would have covered smaller jobs, including Orthopedic Associates.  (Mueller Dep. 49-50, 52, 101-02.)  He explained that "it was a check probably from…one of my contractors or whatever.  This went in to pay like smaller dues for jobs such as the Orthopedic Associates or Aldi or some of the smaller jobs.  This money was allocated for that.  I don't have documentation for that.  We didn't know that we were supposed to document it."  (Mueller Dep. 49-50.)  The Debtor explained, "we were in a bad situation at the time, and I was doing everything that I could.  I gave all my personal money for this."  (Mueller Dep. 52.)  And again in response to the Plaintiffs' questions about which project the payment was to cover, the Debtor stated, "the smaller ones, Orthopedic Associates, Aldi…any other smaller jobs."  (Mueller Dep. 52.)  And later in the deposition, the Debtor stated that the $4,872.54 check was for partial payment on the Orthopedic Associates project, and other smaller projects.  (Mueller Dep. 101-02.)

7

At the hearing, the Court asked the Plaintiffs what evidence in the record supported a finding that the Debtor's failure to pay the claim was more than mere negligence. The Plaintiffs replied that the Debtor is presumed to know the theft by contractor law, and by failing to pay the claim, the Debtor is per se liable for a violation of the Wisconsin theft by contractor statute, and the debt is therefore nondischargeable. However, bankruptcy courts here, guided by the Seventh Circuit's *Meyer* decision, have expressly rejected the theory of *per se* liability for a nondischargeability claim based on theft by contractor. 36 F.3d at 1382-85; *In re Rieck*, 439 B.R. at 702.

For example, the *Rieck* court stated: "To succeed on their § 523(a)(4) claim, the plaintiffs are obligated to prove, at a minimum, that the defendant knowingly or 'recklessly' breached his fiduciary duty under Wis. Stat. § 779.02(5)." 439 B.R. at 702. The Plaintiffs argue that under *In re Dolata*, a debtor commits defalcation where full payment is received but the debtor makes a conscious decision to pay himself rather than the claimants. *Starfire, Inc. v. Dolata (In re Dolata)*, 2010 Bankr. LEXIS 3488 (Bankr. E.D. Wis. Oct. 1, 2010). In that case, the debtor was the co-owner of a business that installed fire protection systems, and the plaintiff was a supplier of fire protection equipment. In a six-month period, the plaintiff invoiced the debtor for 40 jobs totaling over $260,000, of which approximately $97,000 was unpaid at the time of the bankruptcy. The debtor's co-owner had filed bankruptcy in the Western District of Wisconsin, and an exhibit introduced in the co-owner's trial was modified in the debtor's trial to attempt to show that the debtor had not paid overhead at the expense of the supplier. The debtor's attempt failed, and Judge Pepper concluded that the debtor had committed defalcation by his payment of unrelated overhead at the expense of his supplier. This case bears no resemblance to *Dolata*. Here, the Debtor filed an affidavit and testified in a deposition that he

8

believed a check for $4,872.54 that the Debtor hand-delivered to the Plaintiffs covered the amount due to the Plaintiffs for the Orthopedic Associates project. The Debtor was mistaken about that fact, and the benefits due on the Orthopedic Associates project were not paid. The Debtor's deposition testimony and affidavit show that he had borrowed money and used his own savings to keep the business afloat. Unlike in *Dolata*, there is no inkling in this case of a revised exhibit in order to "spin" the facts to escape the theft by contractor statute. Here, the Debtor thought the Plaintiffs were paid on this project; in actuality they were not because the Debtor made a mistake.

Viewing the facts in the light most favorable to the Debtor, it is reasonable to conclude that the Debtor's mere negligence led to his failure to pay the Plaintiffs. Accordingly, summary judgment is not appropriate.

2. Good Hope

The Plaintiffs contend that the Debtor failed to pay fringe benefit contributions in the amount of $11,958.58 for the Good Hope project for work done during May and June 2009. They claim that the Debtor was paid in full for these benefits, and that the Debtor paid the employees' wages in full, but did not pay the Plaintiffs.[2] The Debtor responds that he was authorized to perform work on change orders totaling nearly $30,000 for which he was never paid. The record shows that while the Debtor was paid $58,979.72, he billed a total of $85,948 for the project. (Mueller Dep. Ex. 10; Ho Aff. Ex. 8.) While the additional amount was approved by and billed to the general contractor, the change order costs were never paid. (Ho Aff. Ex. 8.) The Debtor sunk his own money into the Good Hope project to cover unpaid wages

---

[2] Whether subcontractors were paid in full on the Good Hope project is not clear from the record. In his deposition the Debtor answers the question of whom he would pay first, subcontractors or the Plaintiffs: "I would pay them in, you know, percentages, I would divide the money up in percentages to the funds, to the subcontractors, after payroll is made. I had to pay payroll 100 percent. That's my union contract. Payroll had to be paid 100 percent by 3:30 on Thursday afternoon. And that's the–first and foremost, that's what would happen." (Mueller Dep. 56-59.)

9

and suppliers, but did not pay the Plaintiffs for the May and June contributions. (Mueller Dep. 80; Mueller Aff. 2; Mueller Aff. Ex. 2 ("I went through all of my personal money including the money to adopt my daughter.") In reliance on being paid for the change orders, the Debtor failed to pay the Plaintiffs. The Plaintiffs contend (again asserting that the Debtor is presumed to know the theft by contractor law) that this failure is proof that the Debtor's breach was more than merely negligent.

However, the Plaintiffs themselves apparently were unaware of the amount due on the Good Hope project. In early January 2010, the Plaintiffs notified Good Hope Limited Partnership of their intent to file a lien on the project. (Ho Supplemental Affidavit, Ex. 1.) The notice states "M&M Mechanical has failed to pay fringe benefit fund contributions totaling approximately $11,000 on the project for work performed through August 31, 2009. The Funds are in the process of having an audit performed to identify the exact amount of contributions due on said project." (Ho Supp. Aff. Ex. 1.) The Plaintiffs received the $11,000 from the owner in satisfaction of the lien, but in reality over $22,000 was owed on the project, including the $11,000 that the Plaintiffs now seek from the Debtor. At the hearing, the Plaintiffs had no explanation for the failure to include the May and June contributions of over $11,000 in their lien notice. If they had, presumably this amount would have been paid. In response to the Court's inquiry of why the Funds had not sought full payment of their claim from the owner of the project, the Plaintiffs replied that by 2010, the Debtor's defalcation had already occurred, and the Plaintiffs' lien was irrelevant to the nondischargeability of the unpaid debt to the Plaintiffs. This Court disagrees.

At this stage of the proceeding, the Plaintiffs have not shown that the Debtor's failure to pay the benefits due for work in May and June 2009 on the Good Hope project arose from more

10

than mere negligence. Similar to the debtor in *Hunt* who invested in the Internet scams, the Debtor here believed that he would be paid for change orders that would cover the debt to the Plaintiffs. 439 B.R. 690. While the Debtor's belief later proved misplaced, and in hindsight might have been poor judgment, the Plaintiffs have failed to establish that the Debtor's failure to pay was caused by more than mere negligence.

## CONCLUSION

The Court holds that as to the Orthopedic Associates and Good Hope projects, the Plaintiffs have proven that (1) a trust existed; and (2) the Debtor was a fiduciary of that trust. However, under the standard announced in *Meyer*, genuine issues of material fact remain as to whether the Debtor's conduct in failing to pay the Plaintiffs constituted defalcation, because it appears that the Debtor's actions may have been merely negligent. 36 F.3d at 1382-85. The Motion for Summary Judgment, therefore, is denied.

Date: June 8, 2011

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge